Good morning, Your Honors. I'm Brian Isaac. I represent the Plaintiff Appellant. Before I begin my argument, I'd like to introduce you to Andrew Smiley. As you know, Mr. Smiley is one of the trial attorneys, and we're going to be mentioning his name a fair amount here today. This case is a fascinating case from our perspective, even though the issue is an extremely narrow issue. And let me just state at the outset, we are appealing only one issue. The lawyering in the case, I think, was exceptional, both for the plaintiff and the defendant, and the judge did a magnificent job on the trial. The issue here is whether or not there was a settlement of the claim, and I believe also whether or not the doctrine of equitable estoppel applies to bar that claim. And, Your Honors, if I can, one of the things that I wanted to highlight, because I think it's important, is what I call negative implication evidence. Sometimes what people don't say is more important than what they do say, especially when they have a reason to say something which isn't said. Which issue comes first? Is the issue of whether or not there's a settlement? Is that the predominant issue? Or is the issue of whether or not there's judicial estoppel? Well, I think, to be fair, if there's no settlement, the judicial estoppel argument falls. So if you want me to deal with the issue of the settlement first, I'm happy to do that. You deal with the issues as you want, but I just wanted to know. So, Your Honors, as you know, there were multiple offers of settlement made. This case is a little unusual because not only were there multiple offers of settlement, but the lawyers were so good that they actually put them in writing, which we don't see a lot. The final offer of settlement was made at 2.30 after the jury was charged. And as you know, the settlement was accepted by Mr. Smiley at about 9.17, when you take a look at the record. I would like to focus your attention on Mr. Mitchell's affidavit first. It's at page two. I'm sorry, can you talk about the fact that Mr. Smiley responded to the court when it said before you had the opportunity to accept it? And Mr. Smiley responded, yes, Your Honor. I mean, I'm interested in that when you were saying about what mattered was what was not said. That, I think, is a challenging part for you. Fair enough. So my review of the record shows that the district court, and I believe properly, and let's just put this in context. I should have probably put it in my brief, but I didn't. The jury and the court was there until 9.30 on the 16th, which was a Friday. So the judge had every interest in getting everyone out of there. If you look at 27.59 of the record, Your Honor, this is what you should look to first, temporally. This is what Mr. Smiley said at 9.17, and I'm quoting. Okay, because the jury is out there, our client, there was an offer that our client, but it means client, wants to accept before the verdict. And he just told us he wants to accept it and wants me to call the claims adjuster and take that No, I think that that is, in fact, a good fact for you. The problem is, is that later he told the court it was pulled before I could accept. And what I assumed your argument was going to be was that he had accepted it and that it was on the fault of your friends on the other side who suddenly started claiming they didn't have settlement authority. But that's not the argument. I mean, the argument, as I understood it, was instead they improperly pulled it. You know, it had to remain open longer than it was. And we have to deal with him saying on the record that it was before he accepted it, which I mean, is that a concession? How are we supposed to understand? Right. So the answer is no. And you need to look at this temporarily. What he was saying when he said the offer was pulled was that he couldn't put the settlement on the record. I don't even think Mr. Curtis, who's a terrific lawyer, is going to tell you that this judge was going to delay the case by not taking the verdict. No, I think that's fair, too. But he didn't he didn't protest. He didn't say, your honor, I'm preserving for the record that my client has accepted the settlement. He didn't say I object to the reading of the verdict. How are we supposed to understand his saying in open court that he had not yet accepted it? Because I think that when you look at the record, I think both parties agree that the entities that were controlling the settlement were not the attorneys per se, but they were the carrier representatives, Mr. Mitchell and Ms. Posner. And his statement has to be taken in context of what the court wanted. The court wanted a stipulation of settlement on the record. I don't have to tell you. We've done thousands of stipulations of settlement. I can go on the record and say it's hereby stipulated and agreed by and between the attorneys that the case is settled. But if I don't have somebody agreeing to me, I don't have a settlement. And that's what the court wanted. And his statement there wasn't a reflection of an admission that was contrary to the position. It was merely a reflection of the fact that he- How do we even review this? In other words, you're asking us to look at the record and make an assessment and frankly disagree with the district court judge about how to review the back and forth, how to review and consider and make inferences from the different conversations on the record. How do we review that? Are we reviewing it without reference to what Judge Rice thought or concluded? Well, I think what we're asking you to do is to take a look at the record temporally and to make decisions based on what actually happened. To the extent that- And your decision, I mean, your position below, just so I'm making sure I'm remembering correctly, was that there was no need for an evidentiary hearing. That's correct. Our position was that based on the specific language used in the Mitchell affidavit and based on what the record showed with the temporal flow, there was no reason for a hearing. Now, that being said, let me just concede. The district court disagreed with that. District court said, and I'm quoting, this is on 2914, Your Honor, based on what's presented before the court, the court agrees there's a disputed issue of fact about whether the final offer was withdrawn prior to the acceptance. There is a declaration that supports it was, there's a declaration that indicates that it wasn't. And if I read the colloquy correctly regarding the motion itself, I believe defense counsel said three to four times that there's a question of fact. The reason I don't think there's a question of fact is because Mr. Mitchell never, not once, made a statement that he actually withdrew the offer. It's on one page, and you can see it. 2821 of the record, paragraph seven. I see my time's up, can I go over? Yes. Okay, thank you. This is what he says. Quote, after the court gave the jurors a modified Allen charge, Mr. Smiley asked to speak with me privately, which we did. Second sentence. At no time during this conversation did I tell Mr. Smiley that the final offer remained open or available. Now that doesn't mean anything. The fact that he didn't tell him that it wasn't there doesn't mean it was withdrawn. And here's the key sentence. I'm sorry, this is paragraph seven? Paragraph seven, 2821. Okay. Yeah. You have it, your honor? Yeah. Okay. I'm on the third paragraph now. And this is what he says. Quote, I withdrew the final offer by telling Mr. Smiley that I wanted to hear from the jury before having any further settlement talks. Now, just take that sentence. He's not saying I withdrew the offer because I wanted to hear the jury. He didn't say I pulled the offer. And I realize that you argue from what you say is an ambiguity in the affidavit. I think the defense took the position below that we could have a hearing. But let's back up a minute and go back to my colleague's comment. What do we do with your client's representation to the court? And why . . . how did the district court abuse its discretion in determining that all the elements of judicial estoppel had been made out based upon what your client, we have on the record, is saying to the court, that your client's present position is clearly inconsistent with the representation to the court at the time the jury was waiting to deliver the verdict? The court acted based on that representation. And to go back now would create an unfair advantage. So, two responses to that, Your Honor. And, Your Honor, that's why I read from, I'm sorry, 2759 first. We take the statement that Mr. Smiley made in context to deal only with the fact that the settlement could not be put on the record. And the trial court's edict, and I think it was correct, was if you can't put a settlement on the record, I'm taking the jury verdict. The legal response to your question, Your Honor, is in the second prong of the estoppel argument, which says that the party's former position has been adopted in some way by the court in the earlier proceeding. We never wanted the jury to take a verdict. We wanted to put the settlement on the record. So I think with the estoppel argument, you lose on two, and I don't think we got an unfair advantage at all. I see my time is up. I don't want to go over. Can I just say one other thing, and then I'll sit down? I know that we did not request a hearing. We thought the issue was one of law, obviously. But I do believe that if you disagree with us, and there's a possibility that you will, you do have the power to issue a remand if you so elect. Thanks for listening to me. Sorry. No problem. Thanks. May it please the court. Good morning. Michael Curtis for the respondents. I would disagree with counsel, and I would start by saying that I think Judge Rice would have taken the time to inquire and figure out what the facts were with respect to this purported settlement. I mean, can you explain to me why counsel saying in open court my client accepts wasn't acceptance? Because that's not what he said. What counsel said was there was an offer that was offered, and now my client wants me to call the claims adjuster and accept it. And Judge Rice understood that to mean there was a prior offer that I want to see if the claims adjuster maybe would reconsider in light of the impending verdict. Why wasn't the fact that he's, it sounds to me like you're quibbling over words. When someone says, I want to accept it, and he, and there is counsel of record in the room. Why isn't that sufficient? I don't even, the insurance agent wasn't even a lawyer. I mean, who was supposed to be speaking on behalf of the client? Right. All negotiations went through the insurance representative. Was that made clear? In other words, so I think on the record that it was made clear that Mr. The only person who could accept or make an offer and then accept. Yes, that's undisputed. They were all Mr. Mitchell's offers. Trial counsel were not even present at the post summation conversation between Mr. Mitchell and the entire plaintiff's team. Well, I'm asking how that could be done. I mean, isn't that destabilizing where you have somebody who is representing the client in court, a counsel of record, not being in a position to be able to transmit to the client that the offer has been accepted? Why wasn't that sufficient? Because at that time there was no offer to be accepted. Okay. No, but that's Carper Hoard, of course, right? Like you didn't say that, or at least I didn't read the record as saying that. I read the record as saying that, oh, we don't know. We're not in the loop to find out later. That might be that there wasn't, but you can't say that's why they didn't know that there wasn't, that there was going to be disputing that there was an offer. They simply weren't prepared to accept an offer, and I'm not sure what the counsel should have done other than telling opposing counsel, we're ready to accept. We've accepted. Well, he didn't say that. That's what he could have done, and he could have told the court, I accepted this offer, and the court made it very clear to the parties. Because it was in real time. It wasn't, he accepted it before, he's saying I'm accepting it now. Why isn't that? Because that's not the statement that he made, but because then he went and he said the exact opposite to the court. If that statement is ambiguous, and it's at least ambiguous. Okay, well, I'm glad you mentioned that, because I think that puts us on another weird legal issue. What, my understanding of contract law, and certain rules regarding when things have to get put back and forth, is that there are actually legal principles. And if plaintiff's counsel just made a mistake, like if plaintiff's counsel just made the mistake of thinking that, oh, they need that, that you for some reason couldn't accept the offer. Then how are we in a position to be able to not address what needed to be happened as an operation of law? Because the threshold question, before you even need to consider whether contract law applies, is you have to consider whether judicial estoppel doctrine applies. No. Yes. That's only after the fact, right? If he were in a position where merely saying, I accept the offer, was sufficient, then the fact that he didn't use the exact words shouldn't be in a position where it gets your client out of their obligations, right? But he said. And then we could find out whether or not there was a meeting of the minds, but we're talking about the acceptance part, right? That's the only part that was at that moment in open court in dispute. At that time, yes. Because neither the court nor trial counsel were privy to or present for the conversation between Mr. Mitchell and Mr. Smiley. And so the court allowed counsel to leave the courtroom to make that phone call and came back in and counsel advised the offer was withdrawn and it was judged. So your view of the order of analysis, based on an answer you just gave, is that we should consider judicial estoppel. Absolutely. Before we consider whether or not a contract was formed. In other words, whether there was a settlement. Yes, that's right. Why is that? Because counsel did not claim before the jury's verdict that he had accepted the settlement. He had stated unequivocally, it was pulled before I could accept it. And this was, you know, Judge Rice was in no hurry. If you look at, I'll direct the court's attention to A2686 and 87. This is the pre-verdict colloquy. The court asking, do we have a settlement? What page numbers again? 2686. It says, this is the court, do we have a settlement? Mr. Smiley responds, apparently it was just pulled. The court then says, it was just pulled? And Mr. Smiley says, yeah. The court, seeking further inquiry, further information, further knowledge as to whether there was a settlement agreement, says, before you had an opportunity to accept it? And Mr. Smiley responds, yes, your honor. With no further clarification, no qualification, no objection, and no complaint. And to borrow a quote from Plaintiff's reply brief at page 10, quote, language that is clear and unambiguous is not entitled to reinterpretation by the parties. But that's still cart before the horse. Well, that may not be cart before the horse. Explain to me why it's not cart before the horse. That is only a correct statement if the offer had not been accepted. If the offer, I mean, let's presume, just for a second, if there was no dispute that there was a valid offer and that it had been accepted, you wouldn't be asking us to hold Plaintiff's counsel to something that was just an erroneous words that came out of their mouth. Is that correct? Or would you be asking us to do that? No, I mean, it's not cart before the horse because the judicial estoppel doctrine addresses the integrity of the court and the inherent unfairness of taking two contrary positions when the first position was relied on. Don't most of the judicial estoppel cases deal with two different litigations? Yes, but this circuit has held that it can apply at two different stages of the same case. And here what the unfairness developed and the harm to the integrity of the court is the fact that Plaintiff represented to the court there was no verdict, there was no settlement, we took the verdict. Plaintiff retained essentially what was a pocket view. I'm sorry, what's a high-low? Can you explain to me what a high-low offer is? Sure. It's when the parties agree on a range where in a worst-case scenario the plaintiff will get this amount and in a worst-case scenario for the defendants. And that's after a verdict, right? It's after a verdict. Okay, so why is it inconsistent with the idea of hearing a verdict? Because that's an agreement by the parties and the parties are in equal footing and have made that agreement with one another. But here— So then we're back to the contract being— But we're not because the defendants did not retain the pocket veto that Plaintiff retained for himself. So if Plaintiff had gotten what he had asked for in a summation which was upwards of— Okay, let me ask a different question. How was it unfair to hear the verdict if what he is arguing was that one of the things was a high-low offer? He wasn't arguing— Wouldn't you need to hear the verdict in a high-low offer? If you had agreed to a high-low, but there's no claim that there was an agreement to a high-low. The final offer was a flat figure. And so the unfairness and the reason Estoppel has to apply before you even reach the question of contract interpretation is because Plaintiff retained solely the ability to essentially veto the jury's verdict. And he could decide with nobody else being aware that this was even at issue— Well, no, there would still have to be a proof that there was a contract formation. And in this case, there's a question of— But there wouldn't because there would have been no post-trial motion had Plaintiff received $100 million, which is what he asked for. Old Plaintiff would have kept the fact of his supposed enforceable settlement agreement to himself. And that's the inherent unfairness. So now you're suggesting there was gamesmanship as opposed to an unfair advantage because we can imagine a universe in which a verdict is completely consistent with an offer, right? A high-low was one of them. I'm not suggesting that's exactly—that's what Judge Rice found. And I'll quote from her decision. And when she explains, probably better than I did, the inherent unfairness of Plaintiff's position. And that's this. This is S.P.A. 6. To now allow Plaintiff's counsel to represent that a settlement existed because he voiced an intention to accept an offer which defendants contend was rescinded would encourage gamesmanship. That would frustrate the administration of justice. A party could await the jury's verdict, determine whether it was favorable. And if it was not, claim a settlement that was not memorialized in any matter, never presented to the court, and the existence of which is in dispute. That's exactly what happened here. It was non-abusive discretion for Judge Rice to make that finding because the judicial estoppel finding was not based on a legal error, not based on a clearly erroneous factual finding, and fits comfortably in the range of permissible decisions. So you also believe that the standard of review here is abuse of discretion? It is abuse of discretion, and that's, I believe, Zervos v. Verizon, New York Inc. That's a Second Circuit case from 2001. And it's not an abuse of discretion. Even, I mean, Plaintiff cannot identify a legal error, cannot identify a clearly erroneous factual finding. How about most of the cases that are reserved judicial estoppel for mis- and equitable doctrines? So it's used in context where there's deliberate or intentional action. So do we really have enough in the way of factual findings here to determine? I know the argument about the structure of the incentives that this would create for gamesmanship generally, but we don't have a lot telling us what happened in this case, except for two affidavits that the district court found to be opposing. Right. And I'm just over it, but if I could just address this. That was at Plaintiff's invitation. It wasn't Plaintiff saying we don't need a hearing because there are only issues of law. Plaintiff invited the court to render issues, make findings of fact. And I'll address the court's attention to A2913. This is during the oral argument on the party's post-trial motions. This is Mr. Smiley. This is about halfway down the page, line 14. And so that's for the court to determine on credibility. The court can weigh the credibility of the determinations, excuse me, of the declarations. The court can weigh my credibility, that if somehow I thought that it was withdrawn or not withdrawn based on what I'm representing to the court, the court can look at all the declarations from all the lawyers. And that was the path that Plaintiff charted. The court, to the extent there was an issue of fact, followed it and found contrary to what Plaintiff wanted. I mean, the inherent unfairness of now getting a hearing is identical to the unfairness of now getting the purported settlement agreement. Because Plaintiff, you know, so it's constant goal shift, goalpost shifting, moving the ball until Plaintiff can get what Plaintiff wants. But at the end of the day, Plaintiff should be bound by the representations to the court and the positions that he takes to the court. And here that requires affirmance of Judge Rice's decision and her finding that judicial estoppel precludes the argument that there was an enforceable settlement agreement. I'll address to my brief. Obviously, you also take the position that there was no settlement given the words. So this concept of judicial estoppel is intertwined with whether or not there was a settlement agreement. For example, if Mr. Smiley had said I've got a settlement offer, we accept it, then it would be the end of the story. Would you agree? Had he said that before the verdict? Yes. Yes, because then the defendants would have been in an equal position with him where we could either dispute that assertion, then maybe agree to take the settlement even if we didn't agree that it was available to him at that time. But we could hash it out and the court could follow up and inquire as she did before the verdict. It was nothing preventing Mr. Smiley or any other of Plaintiff's three attorneys who were present from saying one sentence. I accepted it and now they're trying to renege. There's no question that Mr. Smiley had, as an attorney, the power or the authority to accept the offer. As plaintiff's counsel? Yes. Yes, yes. And if you're honest, I have no further questions. I'm sorry. Did you guys go to camp? We did go to camp. Our mediation program? We did, yes. And it wasn't? It was not successful, Judge. Thank you. Your Honor, if I can, Mr. Curtis made this point before. I kind of want to push back on it, that we somehow had carte blanche to accept the settlement, take the verdict, and then not accept it. I'm sorry. I don't believe that that's correct. Maybe I'm naive and maybe I don't know what's going on, but I don't think that's right. I think lawyers are officers of the court. And if, in fact, they made a motion to enforce the settlement, if the situation was reversed, I think Mr. Smiley, his father, and the two other lawyers would say exactly what they said there as well. The problem here is that there was a settlement. If you look at Mitchell's affidavit- So I'm very sympathetic. I get it. I'm very sympathetic given the circumstances, but I'm having a problem because there is just two statements in it. But one of them, and I've been in your position, where I know on behalf of a client I tried to accept an offer, offer withdrawn. Can't accept it, no settlement. But here there's a statement. Before I had an opportunity to accept the settlement. It's there. I'm not suggesting- And that, to me, I'm asking you to help me. Sure, I'm going to try. That, to me, means that in the lawyer's mind, at the very least, we're talking about the meaning of the mind, in the lawyer's mind who has authority to accept or reject an offer, it's withdrawn before I had an opportunity to accept. So it's not an accepted offer. And that's it. 917, 925, 925. I'm looking at it right now. So explain this to me. Let me try. Let me try to convince you. That statement taken out of context could mean exactly what you said. But the fact of the matter is that taking in context, that statement referenced Smiley's interaction with Mitchell through May, where May said we want to take a verdict. All that means, in my view and in the plaintiff's view, is that he couldn't put a stipulation of settlement on the record because there was a reneging. And if you look at it temporally- But you didn't say that. You didn't say that. So the other thing you can say in front of Judge Rice, and again, help me. Got it. The other thing you could have said is we did not have- We had an offer. I accepted. We can't put this down in the form of a written stipulation that we can then present to the court. You didn't say that. That wasn't there. So I can't make up facts that aren't there. But what I'm saying is that in context, that's what was happening. It was crystal clear to everyone there that the judge was going to take the verdict. So him saying that would have been a superfluous act. It probably would have been better. So a superfluous act. The problem is that when you're in court, there are no superfluous acts. You can object. And you can make the statement that you've got to make in order to preserve the appellate record. This is why I've been asking about the review. It's abuse of discretion, and you're asking us to make inferences that differ from the inferences on the same record that Judge Rice made. I'm over my time again. Can I respond? I always ask for permission. So, Judge, I understand that. We think the issues are still legal issues, which are de novo, not necessarily abuse of discretion issues, contextually. I would also point out to the court that if you look at 2905 to 2906, starting, Your Honor, line 24, this is what the defendant says. So if this court is inclined to grant plaintiff's requested relief, it is and has been the defendant's position that an evidentiary hearing must be conducted first. And finally, there is one other fact that I didn't mention, and I'll sit down. I promise I won't go over. When you read the colloquy, because of what happened, Mr. Smiley was unaware of the fact that Vermont law, unlike New York law, has a different relationship or different law regarding the relationship between counsel and the insurer. In New York, if you're assigned defense counsel, your responsibility is only to the insured. With respect to the issues in Vermont, there's a tripartite relationship, and the defense attorney is an agent of both the insured and the insurer. So Mr. Smiley's statement- Can that be overridden? Excuse me? In other words, can it be made clear by the insurer that you can only deal with the adjuster here, Mr. Mitchell? You can agree to anything you want, but the fact is Mitchell wasn't there. And when Smiley said, I accept the offer. And remember, you've got five affidavits with no countervailing affidavits from any of the defense lawyers who were there. He said, I accepted it. That, at the very least, can't be summarily decided against the plan. Thanks for listening to me. Thank you both, and we will take the matter under advisement.